**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR **2 0** 2025

TAMMY H. DOWNS, CLERK
By:_____ **DEP CLERK**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

ARKANSAS ASSOCIATION OF THE DEAF

        Plaintiff,

v.

COMMISSIONER AND SECRETARY OF THE
ARKANSAS DEPARTMENT OF EDUCA-
TION JACOB OLIVA, in his official capacity,
and ARKANSAS BOARD MEMBER SARAH
MOORE, in her individual capacity, ARKAN-
SAS    BOARD    MEMBER    KATHY
MCFETRIDGE-ROLLINS, in her official capac-
ity,    ARKANSAS    BOARD    MEMBER
ADRIENNE WOODS, in her official capacity,
ARKANSAS    BOARD    MEMBER    RANDY
HENDERSON, in his official capacity, ARKAN-
SAS BOARD MEMBER LISA HUNTER, in her
official capacity, ARKANSAS BOARD MEM-
BER JEFF WOOD, in his official capacity, AR-
KANSAS BOARD MEMBER KEN BRAGG, in
his official capacity, ARKANSAS BOARD
MEMBER LEIGH S. KEENER, in her official
capacity, and ARKANSAS BOARD MEMBER
GARY ARNOLD, in his official capacity.

        Defendants.

Case No.: **4:25-cv-273-KGB**

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

This case assigned to District Judge __Baker__
and to Magistrate Judge __Ervin__

## COMPLAINT

The Arkansas Association of the Deaf ("AAD" or "Plaintiff") file this Complaint against Jacob Oliva, Arkansas Board Member Sarah Moore, Arkansas Board Member Kathy McFetridge-Rollins, Arkansas Board Member Adrienne Woods, Arkansas Board Member Randy Henderson, Arkansas Board Member Lisa Hunter, Arkansas Board Member Jeff Wood, Arkansas Board Member Ken Bragg, Arkansas Board Member Leigh Keener, and Arkansas Board Member Gary Arnold (collectively, the "Defendants"). Plaintiff allege as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff AAD advocates for the rights and interests of deaf Arkansans, including those who are a part of ASD or ASBVI.

2.      Plaintiff's members are Deaf, Deafblind, DeafDisabled, hard of hearing, or late-deafened individuals (collectively, "deaf" unless specified otherwise) who use various communication methods, including American Sign Language ("ASL"), tactile sign language, speech, and braille.

3.      Plaintiff's members have direct ties to the Arkansas School for the Deaf ("ASD") or the Arkansas School for the Blind and Visually Impaired ("ASBVI") as students, staff, parents, or community members (e.g., alumni, grandparents, neighbors, or volunteers).

4.      In late December 2023, Defendants posted a state-created social media survey soliciting feedback from "stakeholders" with direct connections to ASD and ASBVI on the Arkansas Department of Education ("ADE") Facebook page. But Defendants failed to ensure the survey was accessible for Plaintiff's members. This failure prevented Plaintiff's members from fully participating in the survey, leading to limited responses and inadequate feedback from the target audience concerning ASD and ASBVI.

5.    AAD, on behalf of its members, made multiple requests to Defendants to republish the survey in an accessible format, including ASL translations and audio descriptions. Defendants did not do so.

6.    Upon information and belief, after the survey closed on January 5, 2024, Defendants deleted all information about the survey from ADE's Facebook page.

7.    Defendants relied on the results of this inaccessible survey. Governor Sarah Sanders ("Governor Sanders") stated the state's plan for ASD and ASBVI was based on a "survey of the school community."[1]

8.    On March 17, 2025, Arkansas Representatives Joey Carr and Tippi McCullough and Arkansas Senator Jane English introduced House Bill 1810 ("HB 1810") in the Arkansas 95th General Assembly.

9.    HB 1810 seeks to merge ASD and ASBVI into an entity called "Arkansas School for the Deaf and Blind." This bill removes numerous protections and specific provisions related to the operation of ASD and ASBVI.

10.    Defendants knew of their obligations to provide Plaintiff's members with communication access, including ASL translations and audio descriptions and related auxiliary aids and services, yet ignored them.

11.    Defendants intentionally discriminated against Plaintiff's in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165 ("Title II") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Section 504").

---

[1] Josh Snyder, *Sanders announces plans for new, state-of-art facility on site of schools for the blind, hearing impaired*, Arkansas Democrat Gazette (Feb. 14, 2024), https://www.arkansasonline.com/news/2024/feb/14/sanders-announces-plans-for-new-state-of-the-art/.

12.     Because of Defendants' unlawful discrimination, Plaintiff's members were denied their right to civic participation. Defendants' discriminatory conduct effectively silenced an entire community's voice in matters directly affecting their lives and education. Without immediate court intervention, Plaintiff's members will face barriers to meaningful engagement with the policymakers whose decisions affect their community.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. This Court may grant declaratory, injunctive, and other relief under 28 U.S.C. §§ 2201-2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

14.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to this action occurred in the Eastern District of Arkansas.

## PARTIES

15.     Plaintiff AAD is a 501(c)(3) state membership nonprofit organization based in Little Rock, Arkansas. AAD is the sole civil rights organization of, by, and for deaf Arkansans. AAD has over 155 deaf members. Since the late 1800s, AAD has supported, educated, and advocated for deaf Arkansans, including its members.

### *Associational Standing*

16.     The AAD advocates for the rights and interests of deaf Arkansans, including those who are a part of ASD or ASBVI. As a result, Plaintiff's members are among the constituents who are served by, and who inform the work of, the AAD. The interest of these constituents in remedying discrimination goes to the heart of AAD's mission to ensure that deaf people achieve full participation in life and community.

3

17.    AAD's Board, which sets the overall policy direction of the organization, is made up of people with disabilities. The Board members are deaf or have direct ties to ASD and ASBVI as staff, parents, or community members.

18.    People with disabilities also play a significant part in the day-to-day operations of the AAD. A majority of AAD's volunteer staff are people with disabilities. These people work directly with AAD's constituents. AAD staff collaborate with local and national disability organizations and task forces that also consist of people with disabilities.

19.    AAD has associational standing to sue on behalf of its deaf members because AAD has members residing in Arkansas who are being discriminated against by Defendants who are not providing these members with effective communication. Such members have standing to sue Defendants on their own. Advocating on behalf of its members is germane to AAD's mission of advocating for its members' rights to full participation in life and community. None of AAD's members are required to participate in this action because AAD seeks declaratory and injunctive relief, not an individualized remedy for its members.

20.    Jacob Oliva, who is being sued in his official capacity as Secretary, is and was at all relevant times the Secretary of the Arkansas Department of Education ("ADE") and Commissioner of ADE's Division of Elementary and Secondary Education ("Secretary"). As Secretary, he oversees Arkansas' state-led programs involving early learning and K-12 education, including ASD and ASBVI.

21.    State Board Members Sarah Moore, Kathy McFetridge-Rollins, Adrienne Woods, Randy Henderson, Lisa Hunter, Jeff Wood, Ken Bragg, Leigh Keener, and Gary Arnold, who are being sued in their official capacities, are members of the Arkansas State Board of Education. The board has two members from each of Arkansas' four congressional districts, and the last member

4

is selected at large. The governor selects each member for seven-year terms. The board is the policy-making body for public K-12 education in Arkansas.

22.     The Secretary oversees the ADE. The ADE and Arkansas Board of Education are public entities subject to Title II. Defendants are recipients of federal financial assistance, including grants for education programs. As public entities receiving federal financial assistance, Defendants are subject to the United States Department of Justice ("DOJ") regulations implementing Title II of the ADA, 28 C.F.R. pt. 35, and Section 504, 28 C.F.R. pt. 42, Subpart G.

23.     At all relevant times, Defendants were acting under color of state law, under their authority as officials, agents, or employees of the State of Arkansas, within the scope of their employment as representatives of public entities, as defined by 42 U.S.C. § 12131(1), and as representatives of a "department, agency, special purpose district, or other instrumentality of a State or of a local government" under 29 U.S.C. § 794.

## STATEMENT OF THE FACTS

24.     Plaintiff's members are deaf.

25.     Plaintiff's members have direct ties to ASD or ASBVI as students, staff, parents, or community members.

26.     Plaintiff's members are substantially limited in the major life activity of hearing and/or seeing.

27.     Plaintiff's members use various communication methods, including ASL, tactile sign language, speech, and braille. ASL is a distinct visual-gestural language with its vocabulary, grammar, and structure, separate from English—it is not English in hand signals. ASL has no written component. Tactile sign language is a method of communication that uses touch to convey messages, used by Deafblind individuals who place their hands on the signer to follow what is

communicated through touch and movement. Braille is a system of raised dots that can be read by people who are blind or have low vision.

28.    Some of Plaintiff's members have a limited ability to read and write in English. Other Plaintiff's members recognize some English or use some English. But for several reasons, including early language deprivation, many deaf people have a very limited ability to read and write in English. Deaf people who do not read and write English fluently require sign language interpreters to translate written documents into sign language, especially for complex topics.

29.    Some of Plaintiff's members are hard of hearing and have concurrent blindness or low vision. Not all these individuals use braille to access written content. Instead, they rely on audio descriptions to obtain written information through listening.

### *ASD and ASBVI*

30.    In 1849, with the support of the State of Arkansas, ASD was established. ASD is the only school for the deaf in Arkansas and is a fully accredited, tuition-free state public school for eligible deaf preschool and K-12 students. Most students live in dormitories on campus during the week.

31.    ASD's mission is to ensure its students are educated, motivated, and independent communicators who become productive, self-sufficient citizens.

32.    Adjacent to ASD, the ASBVI provides education for blind or visually impaired students from birth to twenty-one. Most students stay on campus during the week.

33.    ASBVI's mission is similar to ASD—to ensure its students become productive, self-sufficient citizens.

### *Defendants Publish the Survey*

34.    On December 22, 2023, Defendants posted the survey on ADE's Facebook page. The survey sought feedback from stakeholders with direct connections to ASD and ASBVI. The deadline to respond to the survey was January 5, 2024.

35.    The ADE survey[2] solicited feedback about the quality of ASD and ASBVI education, sufficiency of funding for ASD and ASBVI, availability of ADE resources for ASD and ASBVI, and other topics relevant to the ASD and ASBVI communities.

36.    But the survey used ambiguous terminology and repetitive language, making comprehension exceptionally challenging for Plaintiff's members. The survey lacked auxiliary aids, including ASL translations or audio descriptions, to ensure effective communication and participation for Plaintiff's members.

37.    Defendants did not inform Plaintiff's members about the ADE survey before December 22, 2023.

38.    Indeed, some of Plaintiff's members only became aware of the ADE survey on December 27, 2023. At this time, ASD and ASBVI students and staff were on winter break. Due to the poorly timed release of the survey during the holidays, the target audience—students, staff, parents, and community members—had only a few days to learn about, access, and respond to the survey once they returned from winter break.

---

[2] AAD received a document production from ADE in response to a Freedom of Information Act ("FOIA") request. This document production contained several surveys for 2023-2024. The surveys appear to vary based on the respondent's role (student, staff, parent, and community) with one version containing 152 questions across 106 pages. For the purposes of this motion, Plaintiff refer to all versions collectively as the "ADE survey" or "survey." Plaintiff is still uncertain about the exact contents of the other surveys or what versions were distributed to the ASD and ASBVI communities.

39.    Compounding this timing issue, when Plaintiff's members accessed the survey, they faced significant barriers because of a lack of auxiliary aids, including ASL translations and audio descriptions. Due to these barriers, many of Plaintiff's members submitted incomplete responses or failed to complete the survey.

40.    Even people with strong English proficiency struggled to respond to the survey. On December 27, 2023, AAD Vice President Jeff Prail took the ADE Survey. Mr. Prail does not exclusively rely on ASL, but still found that many questions lacked specificity, hampering his ability to provide responsive answers.

41.    AAD received a flood of complaints from its members who expressed concerns about the accessibility of the survey. Members expressed intense frustration with the written English-only format, unclear questions, and the lack of ASL translations and audio descriptions—all of which prevented their ability to respond.

### *Plaintiff Expresses Serious Concerns Regarding the Survey*

42.    On December 27, 2023, Mr. Prail contacted Jack Sission, the Senior Advisor for Healthcare for Governor Sanders, seeking clarification about the Defendants' use of "stakeholders" in their social media posts regarding the ADE survey. Mr. Prail also suggested that if Defendants wished to obtain feedback from AAD members concerning ASD and ASBVI, a town hall meeting format would provide a more accessible and appropriate forum.

43.    On January 2, 2024, Mr. Sission responded, stating that the Governor sought meaningful engagement with the ASD and ASBVI communities. He claimed that after careful deliberation, the team chose the survey as the optimal method of soliciting feedback regarding these communities. Mr. Sission did not mention Mr. Prail's town hall suggestion, instead requesting that Mr.

Prail help distribute the survey to AAD members and interested parties. Despite Mr. Prail's explicit request, Mr. Sission failed to identify who the "stakeholders" were under Defendants' definition.

44.     Mr. Prail responded the next day to Mr. Sission. He specifically noted that Mr. Sission still had not provided the requested clarification regarding who the "stakeholders" were. However, Mr. Sission did not ever answer Mr. Prail's question.

45.     Upon information and belief, on January 3, 2024, the ADE posted a reminder on its Facebook page reminding ASD and ASBVI students, staff, parents, and community members to complete the ADE survey before the deadline.

46.     On January 9, 2024, Mr. Prail, acting in his official capacity on behalf of AAD, contacted Defendant Oliva regarding the survey's accessibility issues. In his email, Mr. Prail noted the survey questions did not have ASL translations and audio descriptions, which rendered them inaccessible for Plaintiff's members. Despite the urgency of the situation, Defendant Oliva failed to provide any substantive response addressing these barriers until it was too late. While Defendant Oliva eventually proposed a meeting, it was scheduled for February 2024 after the survey ended. Later, this meeting was cancelled without any future meetings scheduled.

47.     The ADE survey was available online for fifteen days, from December 22, 2023, to January 5, 2024. But the inadequate notice combined with the survey's inaccessible format rendered it impossible for Plaintiff's members to begin answering the questions, let alone complete the survey.

### *The Survey's Aftermath*

48.     On January 5, 2024, the ADE survey closed as scheduled. Despite multiple requests by Plaintiff, Defendants failed to implement any of the requested accommodations for the survey, effectively excluding Plaintiff's members from participating in the survey.

49.     On January 17, 2024, Mr. Prail, acting in his official capacity on behalf of AAD, contacted Arkansas Attorney General Tim Griffin ("AG Griffin"). Mr. Prail explained how Mr. Sission and the Secretary repeatedly failed to address AAD's concerns about the survey's inaccessibility. He also requested information regarding the survey's development and administration under the Arkansas Freedom of Information Act ("FOIA").

50.     On January 19, 2024, Deputy Attorney General Alexandra Benton responded to Mr. Prail, stating that the Attorney General's Office did not have documents or materials responsive to his FOIA request. Deputy Attorney General Benton suggested that Mr. Prail submit a FOIA request to the ADE.

51.     On January 25, 2024, Mr. Prail submitted a FOIA request to the ADE. Six days later, the ADE requested further clarification regarding his FOIA request. Mr. Prail sent a follow-up response on January 31, 2024, providing additional details. Several months later, the ADE provided documents in response to the FOIA request.

52.     On January 26, 2024, in response to the growing public outcry regarding the survey's inaccessibility, the ADE released a public statement attempting to distance itself from the survey. The statement claimed that the survey was requested by Arkansan legislators who wanted feedback from their constituents regarding ASD and ASBVI. The ADE also stated it did not create the survey but shared it on its Facebook page to encourage responses.[3]

53.     On February 13, 2024, Governor Sanders held a press conference. During this press conference, Governor Sanders stated that the state's plan for ASD and ASBVI was based on the input from a "survey of the school community."[4]

---

[3] *See supra*, note 2.

[4] Snyder, *supra* note 1.

54.    On March 17, 2025, Arkansas House Representatives Joey Carr and Tippi McCullough and Arkansas Senator Jane English introduced HB 1810. This bill proposes the merger of ASD and ASBVI into a single entity called the "Arkansas School for the Deaf and Blind." H.B. 1810, 95th Gen. Assemb., Reg. Sess. (Ark. 2025).

55.    HB 1810 proposes to eliminate the separate boards of trustees for ASD and ASBVI and replace them with a single board consisting of five members appointed by Governor Sanders. Under the proposed bill, these appointments are no longer subject to Senate confirmation or legislative oversight.

56.    The proposed bill eliminates the current statutory requirement that the board include one "member . . . who is a 'deaf person who fluently utilizes deaf sign language'", and in so doing, effectively removes guaranteed deaf representation on the governing board. Ark. H.B. 1810.

57.    Beyond governance changes, HB 1810 removes numerous protections and specific provisions related to the operation of ASD and ASBVI. For instance, employees are no longer compensated for providing parent training or student tutorial services on the weekends or evenings, reducing support for students and their families.

## COUNT I
### Violations of Title II of the *Americans with Disabilities Act*

58.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

59.    On July 12, 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

60.    Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

61.    Title II of the ADA defines an "individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12132(2).

62.    Plaintiff's members are individuals with a disability because they are substantially limited in the major life activity of hearing and/or seeing.

63.    Plaintiff's members also meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. They are, hence, "qualified individual[s] with a disability" under Title II of the ADA. 42 U.S.C. § 12131(2).

64.    Defendants are a department, agency, or an instrumentality of the State of Arkansas; as such, they are public entities under the ADA. 42 U.S.C. § 12131(1)(B).

65.    At all times relevant to this action, the ADA was in full force and effect in the United States. Plaintiff's members have a right not to be subjected to discrimination on the basis of their disability by Defendants. 42 U.S.C. § 12132.

66.    Department of Justice ("DOJ") regulations implementing Title II of the ADA require the provision of effective communication as part of its nondiscrimination mandate. 28 C.F.R. § 35.160.

67.    DOJ regulations state that "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public . . . with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a).

68. Defendants' failure to provide effective communication for Plaintiff's members denied, on the basis of their disability, the same access to the services, benefits, activities, programs, or privileges as provided to hearing and/or sighted individuals.

69. To ensure effective communication, the ADA requires that "a public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1). Auxiliary aids and services include, but are not limited to, "qualified interpreters" and "methods of making visually delivered materials available to individuals with visual impairments." 42 U.S.C. § 12103.

70. In determining what auxiliary aid is necessary, "a public entity shall give primary consideration to the requests of the individual with disabilities." 28 C.F.R. § 35.160(b)(2).

71. Defendants knowingly and intentionally failed to provide Plaintiff's members with ASL translations and audio descriptions of the ADE survey, subjected them to discrimination, and/or maintained policies and procedures that had a disparate impact on Plaintiff's members because of their disability, resulting in Plaintiff's members being denied the same benefits and services available to hearing and/or sighted Arkansans. Among other things, because of Defendants' failures and denials of requests for ASL translations and audio descriptions of the ADE survey, Plaintiff's members were deprived of their right to civic participation.

72. These failures violated the rights of Plaintiff's members under Title II of the ADA.

73. Defendants knew of the substantial likelihood of a violation of the federally protected rights of Plaintiff's members and failed to act on this likelihood.

74. Plaintiff is entitled to injunctive relief, declaratory relief, and attorneys' fees and costs.

## COUNT II
### Violations of Section 504 of the Rehabilitation Act of 1973

75.     Plaintiff's members repeat and reallege each and every allegation above as if fully set forth herein.

76.     Section 504 states that "[n]o otherwise qualified individual with a disability in the United States . . . shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

77.     Plaintiff's members are individuals with disabilities because they are substantially limited in the major life activity of hearing and/or seeing. 29 U.S.C. § 705(20).

78.     Plaintiff's members are also qualified individuals within the meaning of the Rehabilitation Act. 28 C.F.R. § 35.104.

79.     Defendants, in their official capacities, are departments, agencies, or instrumentalities of the State of Arkansas and recipients of federal financial assistance. 29 U.S.C. § 794(b)(1), (4). All of the operations of Defendants, including all the operations of the ADE and Arkansas Department Board of Education, are "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B).

80.     The DOJ regulations implementing Section 504 clarify the requirements for Federal financial assistance recipients: "[a] recipient that employs fifteen or more persons shall provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills whereas refusal to make such provision would discriminatorily impair or exclude the persons in the program receiving federal financial assistance." 28 C.F.R. § 42.503(f).

14

81.     Appropriate auxiliary aids include but are not limited to "qualified interpreters" and "methods of making visually delivered materials available to individuals with visual impairments." 28 C.F.R. § 42.503(f).

82.     At all times relevant to this action, Section 504 was in full force and effect in the United States, and Plaintiff's members had a right not to be subjected to discrimination on the basis of their disability by Defendants.

83.     Defendants knowingly and intentionally failed to provide ASL translations and audio descriptions or other necessary auxiliary aids and services the Plaintiff's members requested, subjected Plaintiff's members to discrimination, and/or maintained policies and procedures that had a disparate impact on Plaintiff's members because of their disability resulting in Plaintiff's members being denied the same benefits and services available to hearing and/or sighted Arkansans.

84.     Among other things, because of Defendants' failures and denials of requests for ASL translations and audio descriptions of the ADE survey, Plaintiff's members were deprived of their right to civic participation.

85.     These failures violated the rights of Plaintiff's members under Section 504.

86.     Defendants knew of the substantial likelihood of a violation of the federally protected rights of Plaintiff's members and failed to act on this likelihood.

87.     Plaintiff is entitled to injunctive relief, declaratory relief, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court provide the following relief:

15

1.    Declare that the actions and inactions described herein violate the rights of Plaintiff's members under Title II and Section 504;

2.    Issue an order requiring that Defendants publish a survey identical to the ADE survey with the appropriate accessibility measures;

3.    Issue an order requiring that Defendants put in place the systems, procedures, and personnel needed to ensure that the new survey and any future surveys comply with Title II and Section 504;

4.    Enjoin Defendants from relying on, referencing, citing, or using in any manner the results of the original inaccessible survey in any policy decisions, legislative recommendations, or administrative actions regarding ASD and ASBVI;

5.    Declare that any actions already taken based on the inaccessible survey are deficient and must be reconsidered following the completion of the accessible survey ordered herein;

6.    Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133, 12205, and 28 C.F.R. § 35.175; and

7.    Grant such other and all relief that this Court deems just and proper.


Dated: March 20, 2025                    Respectfully submitted

                                         Michael J. Laux
                                         Michael J. Laux (6278834)
                                         LAUX LAW GROUP
                                         400 W. Capitol Avenue, Suite 1700
                                         Little Rock, Arkansas 72201
                                         Telephone: (501) 242-0750
                                         Facsimile: (501) 372-3482
                                         Email: mlaux@lauxlawgroup.com
                                                 mikelaux@cloud.com

                                         Brittany Shrader
                                         NATIONAL ASSOCIATION OF THE DEAF
                                         LAW AND ADVOCACY CENTER

16

8630 Fenton Street, Suite 202
Silver Spring, MD 20910
Telephone: (301) 587-1788
Facsimile: (301) 587-1791
Email: brittany.shrader@nad.org

*Counsel for Plaintiff*