IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| ARKANSAS ASSOCIATION OF THE DEAF,<br><br>LAHOLLIS HILL,<br><br>LANA ROGERS,<br><br>*Plaintiffs*,<br><br>v.<br><br>COMMISSIONER AND SECRETARY OF THE ARKANSAS DEPARTMENT OF EDUCATION JACOB OLIVA, in his official capacity, and ARKANSAS BOARD MEMBER SARAH MOORE, in her official capacity, ARKANSAS BOARD MEMBER KATHY MCFETRIDGE-ROLLINS, in her official capacity, ARKANSAS BOARD MEMBER ADRIENNE WOODS, in her official capacity, ARKANSAS BOARD MEMBER RANDY HENDERSON, in his official capacity, ARKANSAS BOARD MEMBER LISA HUNTER, in her official capacity, ARKANSAS BOARD MEMBER JEFF WOOD, in his official capacity, ARKANSAS BOARD MEMBER KEN BRAGG, in his official capacity, ARKANSAS BOARD MEMBER LEIGH S. KEENER, in her official capacity, and ARKANSAS BOARD MEMBER GARY ARNOLD, in his official capacity.<br><br>*Defendants*. | **FILED**<br>U.S. DISTRICT COURT<br>EASTERN DISTRICT ARKANSAS<br><br>MAY 2 7 2025<br><br>TAMMY H. DOWNS, CLERK<br>By:_____ DEP CLERK<br><br><br><br>Case No.: 4:25-cv-00273-KGB |

## AMENDED COMPLAINT

1.  In late December 2023, the Defendants posted a state-created social media survey soliciting feedback from "stakeholders" with direct connections to the Arkansas School for the

1

Deaf ("ASD") or the Arkansas School for the Blind and Visually Impaired ("ASBVI") on the Arkansas Department of Education ("ADE") Facebook page.

2. The ADE survey (hereinafter "survey" or "ADE survey") did not have American Sign Language ("ASL") translations. For many deaf Americans, ASL is their primary and preferred language. ASL is a complete and complex language distinct from English. It has its own vocabulary and rules for grammar and syntax. It is not simply English in hand signals. Many deaf[1] individuals cannot read or understand written English.

3. For this reason, the only way many deaf individuals could meaningfully access the survey posted by the Defendants is through ASL translations of the survey questions.

4. Despite Plaintiffs' repeated efforts to have the Defendants provide ASL translations of the ADE survey, the Defendants did not do so. Consequently, Plaintiffs lacked meaningful access to the survey, which solicited feedback on a wide range of issues related to ASD and ASBVI.

5. Upon information and belief, after the survey closed on January 5, 2024, the Defendants deleted all information about the survey from the ADE's Facebook page.

6. The Defendants relied on the results of the inaccessible survey. Governor Sarah Sanders ("Governor Sanders") stated Arkansas' plan for ASD and ASBVI was based on a "survey of the school community."[2]

---

[1] Plaintiffs use the term "deaf" to refer to individuals with hearing levels or hearing loss that qualify as disabilities under the Americans with Disabilities Act and the Rehabilitation Act. The phrase "deaf" includes Deaf, DeafBlind, DeafDisabled, Hard of Hearing, and Late Deafened individuals.
[2] Josh Snyder, *Sanders announces plans for new, state-of-art facility on site of schools for the blind, hearing impaired*, Arkansas Democrat Gazette (Feb. 14, 2024), https://www.arkansasonline.com/news/2024/feb/14/sanders-announces-plans-for-new-state-of-the-art/.

7. The failure to provide ASL translations of the ADE survey is against the law. Federal law unequivocally prohibits discrimination against individuals with disabilities and requires them to have meaningful access to Arkansas' programs and services.

8. Plaintiffs thus bring this action to vindicate their right to meaningful access to all communications from the Defendants, including, but not limited to surveys, social media posts, and other outreach materials disseminated to the public.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. This Court may grant declaratory, injunctive, and other relief under 28 U.S.C. §§ 2201-2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

10. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to this action occurred in the Eastern District of Arkansas.

## PARTIES

11. Plaintiff the Arkansas Association of the Deaf ("AAD") is a 501(c)(3) state membership nonprofit organization based in Little Rock, Arkansas. The AAD is the sole civil rights organization of, by, and for deaf Arkansans. The AAD has over 155 deaf members. Since the late 1800s, the AAD has supported, educated, and advocated for deaf Arkansans, including its members. The AAD is dedicated to ensuring that deaf people achieve full participation in life and community. The AAD has associational standing to sue on behalf of its deaf members because: (i) the AAD's members have standing to sue in their own right, (ii) advocating on behalf of its members on this issue is germane to the AAD's mission of advocating for its members' right to full participation in life and community, and (iii) none of the AAD's members is required to participate in

this action because the AAD is seeking declaratory and injunctive relief and not an individualized remedy for its members.

12. Plaintiff LaHollis Hill is a 42-year-old deaf resident of Little Rock, Arkansas and a member of AAD. ASL is Mr. Hill's preferred and primary language. Mr. Hill has been continuously employed with ASD since 2014, working as a paraprofessional with elementary school children before earning a promotion to his current role as secretary/administrative specialist in 2022. In January 2024, Mr. Hill learned about the survey from AAD, not from his employer ASD. However, without ASL translations of the survey questions, Mr. Hill could not complete the survey. Because he wanted to respond to the survey, he asked others to explain to him the survey questions that he could not understand, but they could not. Furthermore, there was no option to submit responses in ASL, which means Mr. Hill would have been forced to respond to questions seeking a narrative response in English rather than his primary language. Mr. Hill wanted to access the survey because he wanted to provide his input on the future of ASD and ASBVI, including his opposition to the merger of the schools. Mr. Hill would have completed the survey if ASL translations were available.

13. Plaintiff Lana Rogers is a 45-year-old deaf resident of North Little Rock, Arkansas and a member of AAD. ASL is her primary and preferred language. In December 2023, Ms. Rogers learned about the survey from AAD. After learning about the survey, Ms. Rogers attempted to access and complete the survey; however, without ASL translations of the survey questions, Ms. Rogers could not complete the survey. Furthermore, there was no option to submit responses in ASL, which means Ms. Rogers would have been forced to respond to questions seeking a narrative response in English rather than her primary language. Ms. Rogers wanted to complete the survey because she wanted to provide her input on the future of ASD and ASBVI, including her opposition

4

to the merger of the schools. Ms. Rogers would have completed the survey if ASL translations were available.

14. Defendant Jacob Oliva is the Secretary of the ADE and Commissioner of ADE's Division of Elementary and Secondary Education ("Secretary"). As Secretary, he oversees Arkansas' state-led programs involving early learning and K-12 education, including ASD and ASBVI. He is sued in his official capacity.

15. Defendants State Board Members Sarah Moore, Kathy McFetridge-Rollins, Adrienne Woods, Randy Henderson, Lisa Hunter, Jeff Wood, Ken Bragg, Leigh Keener, and Gary Arnold are members of the Arkansas State Board of Education. The board has two members from each of Arkansas' four congressional districts, and the last member is selected at large. The governor selects each member for seven-year terms. The board is the policy-making body for public K-12 education in Arkansas. They are sued in their official capacities.

16. The Secretary oversees the ADE. The ADE and Arkansas Board of Education are public entities subject to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165 ("Title II") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). Defendants are recipients of federal financial assistance, including grants for education programs. As public entities receiving federal financial assistance, Defendants are subject to the United States Department of Justice ("DOJ") regulations implementing Title II of the ADA, 28 C.F.R. pt. 35, and Section 504, 28 C.F.R. pt. 42, Subpart G.

17. At all relevant times, the Defendants were acting under color of state law, under their authority as officials, agents, or employees of the State of Arkansas, within the scope of their employment as representatives of public entities, as defined by 42 U.S.C. § 12131(1), and as

representatives of a "department, agency, special purpose district, or other instrumentality of a State or of a local government" under 29 U.S.C. § 794.

## STATEMENT OF THE FACTS

### *Deafness and American Sign Language*

18. More than 48 million deaf persons live in the United States. In Arkansas, there are over 145,000 people with hearing loss. For many of these individuals—at least several hundred thousand nationwide—ASL is their primary language, and English is, at best, a second language. Many deaf persons know virtually no English.

19. ASL is a complete and complex language distinct from English, with its own vocabulary and rules for grammar and syntax—it is not simply English on the hands. These languages differ not only in the modalities in which they are expressed (auditory versus visual) but also in how words are formed, sentences are arranged, and questions are signaled. Additionally, facial expressions play a significant grammatical role in ASL, while in English, facial expressions only have an affective role in communication.

20. ASL has no widely used or standardized written component. For several reasons, including early language deprivation, many deaf people have a very limited ability to read and write in English. Many deaf Americans, therefore, cannot communicate via written language. Even those individuals who have partially mastered English must rely on their knowledge of ASL to understand English sentences, which can often lead to consequential misunderstandings of written information.

21. Written English is not an effective means of communication for the many deaf individuals who have limited English capabilities, particularly for complex and important topics.

22. Many deaf Americans who use ASL require ASL translations to understand written English content. The most effective interpretations are those provided by native ASL signers. Such fluent and accurate interpretations are critical for deaf Americans, especially for complex and important topics that have an immediate impact on them.

### *ASD and ASBVI*

23. In 1849, with the support of the State of Arkansas, ASD was established. ASD is the only school for the deaf in Arkansas and is a fully accredited, tuition-free state public school for eligible deaf preschool and K-12 students. Most students live in dormitories on campus during the week.

24. ASD's mission is to ensure its students are educated, motivated, and independent communicators who become productive, self-sufficient citizens.

25. Adjacent to ASD, the ASBVI provides education for blind or visually impaired students from birth to twenty-one. Most students stay on campus during the week.

26. ASBVI's mission is similar to ASD—to ensure its students become productive, self-sufficient citizens.

### *Defendants Publish the Survey*

27. On December 22, 2023, the Defendants posted the survey on ADE's Facebook page. The survey sought feedback from "stakeholders" with direct connections to ASD and ASBVI. The deadline to respond to the survey was January 5, 2024.

28. The ADE survey solicited feedback about the quality of ASD and ASBVI education, sufficiency of funding for ASD and ASBVI, availability of ADE resources for ASD and ASBVI, and other topics relevant to the ASD and ASBVI communities.

29. But the survey used ambiguous terminology and repetitive language, making comprehension exceptionally challenging for Plaintiffs. The survey lacked auxiliary aids, including ASL translations to ensure effective communication and participation for Plaintiffs.

30. Defendants did not inform Plaintiffs about the ADE survey before December 22, 2023.

31. Indeed, some Plaintiffs only became aware of the ADE survey on December 27, 2023. At this time, ASD and ASBVI students and staff were on winter break. Due to the poorly timed release of the survey during the holidays, the target audience—students, staff, parents, and community members—had only a few days to learn about, access, and respond to the survey once they returned from winter break.

32. Compounding this timing issue, when Plaintiffs accessed the survey, they faced significant barriers because of a lack of auxiliary aids, including ASL translations. Due to these barriers, Plaintiffs submitted incomplete responses or failed to complete the survey.

33. AAD received numerous complaints from its members who expressed concerns about the accessibility of the survey. Members expressed intense frustration with the written English-only format, unclear questions, and the lack of ASL translations—all of which prevented their ability to respond.

### *Plaintiffs Express Serious Concerns Regarding the Survey*

34. On December 27, 2023, Mr. Prail contacted Jack Sission, the Senior Advisor for Healthcare for Governor Sanders, seeking clarification about the Defendants' use of "stakeholders" in their social media posts regarding the ADE survey. Mr. Prail also suggested that if Defendants wished to obtain feedback from AAD members concerning ASD and ASBVI, a town hall meeting format would provide a more accessible and appropriate forum.

35.     On January 2, 2024, Mr. Sission responded, stating that the Governor sought meaningful engagement with the ASD and ASBVI communities. He claimed that after careful deliberation, the team chose the survey as the optimal method of soliciting feedback regarding these communities. Mr. Sission did not mention Mr. Prail's town hall suggestion, instead requesting that Mr. Prail help distribute the survey to AAD members and interested parties. Despite Mr. Prail's explicit request, Mr. Sission failed to identify who the "stakeholders" were under Defendants' definition.

36.     Mr. Prail responded the next day to Mr. Sission. He specifically noted that Mr. Sission still had not provided the requested clarification regarding who the "stakeholders" were. However, Mr. Sission did not ever answer Mr. Prail's question.

37.     Upon information and belief, on January 3, 2024, the ADE posted a reminder on its Facebook page reminding ASD and ASBVI students, staff, parents, and community members to complete the ADE survey before the deadline.

38.     On January 9, 2024, Mr. Prail, acting in his official capacity on behalf of AAD, contacted Defendant Oliva regarding the survey's accessibility issues. In his email, Mr. Prail noted the survey questions did not have ASL translations, which rendered them inaccessible for Plaintiffs. Despite the urgency of the situation, Defendant Oliva failed to provide any substantive response addressing these barriers until it was too late. While Defendant Oliva eventually proposed a meeting, it was scheduled for February 2024 after the survey ended. Later, this meeting was cancelled by Defendant Olivia because of inclement weather. Plaintiff AAD requested a new date for the meeting; however, Defendant Oliva never responded.

39.     The ADE survey was available online for fifteen days, from December 22, 2023, to January 5, 2024. But the inadequate notice combined with the survey's inaccessible format rendered it impossible for Plaintiffs to begin answering the questions, let alone complete the survey.

### *The Survey's Aftermath*

40. On January 5, 2024, the ADE survey closed as scheduled. Despite multiple requests by Plaintiff, Defendants failed to implement any of the requested accommodations for the survey, effectively excluding Plaintiffs from participating in the survey.

41. On January 17, 2024, Mr. Prail, acting in his official capacity on behalf of AAD, contacted Arkansas Attorney General Tim Griffin. Mr. Prail explained how Mr. Sission and the Secretary repeatedly failed to address AAD's concerns about the inaccessibility of the survey. He also requested information regarding the survey's development and administration under the Arkansas Freedom of Information Act ("FOIA").

42. On January 19, 2024, Deputy Attorney General Alexandra Benton responded to Mr. Prail, stating that the Attorney General's Office did not have documents or materials responsive to his FOIA request. Deputy Attorney General Benton suggested that Mr. Prail submit a FOIA request to the ADE.

43. On January 25, 2024, Mr. Prail submitted a FOIA request to the ADE. Six days later, the ADE requested further clarification regarding his FOIA request. Mr. Prail sent a follow-up response on January 31, 2024, providing additional details. Several months later, the ADE provided documents in response to the FOIA request.

44. On January 26, 2024, in response to the growing public outcry regarding the survey's inaccessibility, the ADE released a public statement attempting to distance itself from the survey. The statement claimed that the survey was requested by Arkansan legislators who wanted

feedback from their constituents regarding ASD and ASBVI. The ADE also stated it did not create the survey but shared it on its Facebook page to encourage responses.[3]

45. On February 13, 2024, Governor Sanders held a press conference. During this press conference, Governor Sanders stated that Arkansas' plan for ASD and ASBVI was based on the input from a "survey of the school community."[4]

46. On March 17, 2025, Arkansas House Representatives Joey Carr and Tippi McCullough and Arkansas Senator Jane English introduced HB 1810.[5] This bill, among other things, proposed the merger of ASD and ASBVI into a single entity called the "Arkansas School for the Deaf and Blind." H.B. 1810, 95th Gen. Assemb., Reg. Sess. (Ark. 2025).

47. HB 1810 proposed the elimination of the separate boards of trustees for ASD and ASBVI and replacing them with a single board consisting of five members appointed by Governor Sanders.

48. The proposed bill also eliminated the current statutory requirement that the board include one "member . . . who is a 'deaf person who fluently utilizes deaf sign language'", and in so doing, effectively removed guaranteed deaf representation on the governing board. Ark. H.B. 1810.

49. Beyond governance changes, HB 1810 removed numerous protections and specific provisions related to the operation of ASD and ASBVI. For instance, employees are no longer

---

[3] *See* Jeannie Roberts, *Future of state deaf and blind schools up in the air*, Arkansas Times (Jan. 26, 2024), https://arktimes.com/arkansas-blog/2024/01/26/future-of-state-deaf-and-blind-schools-up-in-the-air.

[4] Snyder, *supra* note 2.

[5] After HB 1810 was introduced, Arkansas House Representative Tippi McCullough withdrew her support for the bill.

compensated for providing parent training or student tutorial services on the weekends or evenings, reducing support for students and their families.

50. On April 17, 2025, Governor Sanders signed HB 1810 into law. The passage of HB 1810 was a direct consequence of Defendants' failure to provide meaningful access. Policy decisions were made based on survey results that were inaccessible to deaf Arkansans, including the Plaintiffs.

## COUNT I
**Violation of Title II of the Americans with Disabilities Act**

51. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

52. On July 12, 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

53. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

54. Title II of the ADA defines an "individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12132(2).

55. Plaintiffs are individuals with a disability because they are substantially limited in the major life activity of hearing and/or seeing.

56. Plaintiffs also meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. They are, hence, "qualified individual[s] with a disability" under Title II of the ADA. 42 U.S.C. § 12131(2).

57. Defendants are a department, agency, or an instrumentality of the State of Arkansas; as such, they are public entities under the ADA. 42 U.S.C. § 12131(1)(B).

58. At all times relevant to this action, the ADA was in full force and effect in the United States. Plaintiffs have a right not to be subjected to discrimination on the basis of their disability by Defendants. 42 U.S.C. § 12132.

59. Department of Justice ("DOJ") regulations implementing Title II of the ADA require the provision of effective communication as part of its nondiscrimination mandate. 28 C.F.R. § 35.160.

60. DOJ regulations state that "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public . . . with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a).

61. Defendants' failure to provide effective communication for Plaintiffs denied them, on the basis of their disability, the same access to the services, benefits, activities, programs, or privileges as provided to hearing and/or sighted individuals.

62. To ensure effective communication, the ADA requires that "a public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1). Auxiliary aids and services include, but are not limited to, "qualified interpreters" and "methods of making visually delivered materials available to individuals with visual impairments." 42 U.S.C. § 12103.

63. In determining what auxiliary aid is necessary, "a public entity shall give primary consideration to the requests of the individual with disabilities." 28 C.F.R. § 35.160(b)(2).

64. Defendants knowingly and intentionally failed to provide Plaintiffs with ASL translations of the ADE survey, subjected them to discrimination, and/or maintained policies and procedures that had a disparate impact on Plaintiffs because of their disability, resulting in them being denied the same benefits and services available to hearing and/or sighted Arkansans. Among other things, because of Defendants' failures and denials of requests for ASL translations of the ADE survey, Plaintiffs were deprived of their right to civic participation.

65. These failures violated the rights of Plaintiffs under Title II of the ADA.

66. Defendants knew of the substantial likelihood of a violation of the federally protected rights of Plaintiffs and failed to act on this likelihood.

## COUNT II
### Violation of Section 504 of the Rehabilitation Act of 1973

67. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

68. Section 504 states that "[n]o otherwise qualified individual with a disability in the United States . . . shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

69. Plaintiffs are individuals with disabilities because they are substantially limited in the major life activity of hearing and/or seeing. 29 U.S.C. § 705(20).

70. Plaintiffs are also qualified individuals within the meaning of the Rehabilitation Act. 28 C.F.R. § 35.104.

71. Defendants, in their official capacities, are departments, agencies, or instrumentalities of the State of Arkansas and recipients of federal financial assistance. 29 U.S.C. § 794(b)(1), (4). All of the operations of Defendants, including all the operations of the ADE and Arkansas Department Board of Education, are "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B).

72. The DOJ regulations implementing Section 504 clarify the requirements for Federal financial assistance recipients: "[a] recipient that employs fifteen or more persons shall provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills whereas refusal to make such provision would discriminatorily impair or exclude the persons in the program receiving federal financial assistance." 28 C.F.R. § 42.503(f).

73. Appropriate auxiliary aids include but are not limited to "qualified interpreters" and "methods of making visually delivered materials available to individuals with visual impairments." 28 C.F.R. § 42.503(f).

74. At all times relevant to this action, Section 504 was in full force and effect in the United States, and Plaintiffs had a right not to be subjected to discrimination on the basis of their disability by Defendants.

75. Defendants knowingly and intentionally failed to provide ASL translations or other necessary auxiliary aids and services the Plaintiffs requested, subjected Plaintiffs to discrimination, and/or maintained policies and procedures that had a disparate impact on Plaintiffs because of their disability resulting in Plaintiffs being denied the same benefits and services available to hearing Arkansans.

76. Among other things, because of Defendants' failures and denials of requests for ASL translations of the ADE survey, Plaintiffs were deprived of their right to civic participation.

77.     These failures violated the rights of Plaintiffs under Section 504.

78.     Defendants knew of the substantial likelihood of a violation of the federally protected rights of Plaintiffs and failed to act on this likelihood.

## COUNT III
### Violation of the First Amendment of the United States Constitution

79.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

80.     The First Amendment of the United States Constitution guarantees, among other things, "the freedom of speech."

81.     The Supreme Court has held that the protection afforded by the First Amendment "is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 756 (1976). Thus, where one enjoys a right to speak, others hold a "reciprocal right to receive" that speech, which "may be asserted" in court. *Id.* at 757.

82.     This right to receive speech includes speech originating from Defendants, particularly where the speech is made available to the public but not to Plaintiffs and other deaf persons who rely on ASL to communicate.

83.     Defendants' refusal to provide ASL translations prevented Plaintiffs from accessing the communications provided by the State of Arkansas.

84.     Denying this access serves no legitimate or compelling need and is not rationally related or narrowly tailored to serve any government interest.

85.     Providing such access would not impose an undue financial or administrative burden on Defendants.

86.     Accordingly, Defendants' refusal to provide ASL translations for the ADE survey questions violated the First Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered against Defendants and that the Court grant the following:

1. Permanent injunctive relief requiring Defendants to:

    a. Provide ASL translations of all communications from the Defendants, including, but not limited to surveys, social media posts, and other outreach materials disseminated to the public;

    b. Provide the option to submit responses in ASL to all communications from the Defendants, including, but not limited to surveys, social media posts, and other outreach materials disseminated to the public;

2. Declaratory relief that Defendants have violated the Americans with Disabilities Act by failing to provide ASL translations for the ADE survey;

3. Declaratory relief that Defendants have violated the Rehabilitation Act by failing to provide ASL translations for the ADE survey;

4. Declaratory relief that Defendants have violated the First Amendment by failing to provide ASL translations for the ADE survey;

5. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133, 12205, and 28 C.F.R. § 35.175; and

6. Grant such other and all relief that this Court deems just and proper.

(Signature page follows)

Dated: May 27, 2025

Respectfully submitted

<u>Michael J. Laux</u>
Michael J. Laux (6278834)
LAUX LAW GROUP
400 W. Capitol Avenue, Suite 1700
Little Rock, Arkansas 72201
Telephone: (501) 242-0750
Facsimile: (501) 372-3482
Email: mlaux@lauxlawgroup.com
　　　　mikelaux@cloud.com

Brittany Shrader
Drake W. Darrah**
NATIONAL ASSOCIATION OF THE DEAF
LAW AND ADVOCACY CENTER
8630 Fenton Street, Suite 202
Silver Spring, MD 20910
Telephone: (301) 587-1788
Facsimile: (301) 587-1791
Email: brittany.shrader@nad.org

*\*pro hac vice motion forthcoming*

*Counsel for Plaintiff*